UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | Case No. 4:21-CR-00290-1 JAR |
| ) | |
| WILLIAM DAHL, ) | |
| ) | |
| Defendant. ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This matter came before the Court for a bench trial on May 15 and 16, 2023, after Defendant William Dahl waived his right to a jury trial. Upon careful review of the evidence and arguments presented by the parties and having observed the demeanor of the witnesses at trial, the Court finds Defendant guilty and issues these findings of fact and conclusions of law pursuant to Fed. R. Crim. P. 23(c). As further detailed herein, witness testimony and evidence adduced at trial proved beyond a reasonable doubt that Defendant committed the three crimes charged in the Second Superseding Indictment. (Doc. 110).

As to Count One (Production of Child Pornography), evidence and testimony showed that Dahl photographed himself having sex with fourteen-year-old victim "C" and then emailed that image in violation of 18 U.S.C. Section 2251(a). As to Count Two (Receipt of Child Pornography), evidence and testimony showed that Dahl received a pornographic video of victim "S," made when she was sixteen years old, and he received that video online in violation of 18 U.S.C. Section 2252A(a)(2). As to Count Three (Receipt of Child Pornography), evidence and testimony proved that Dahl received a pornographic image of seven-year-old "M," sent by her mother to Dahl over the Internet, in violation of 18 U.S.C. Section 2252A(a)(2).

## I.   FINDINGS OF FACT

### A. Count One: Sexual Exploitation of a Minor

The acts charged in Count I took place in Moberly, Missouri.   Victim "C" was born in 1993. (Gov. Ex. 58). In the summer of 2007, before she entered the eighth grade, at the age of thirteen, she met Dahl through her sister and began a relationship with him. (Trial Transcript, Vol. 1 at 182-84).1  "C" was the "trophy girl" at an area racetrack that Dahl frequented. Dahl would have been nearly twenty-three years old at the time.

Dahl and "C" communicated via email and exchanged pictures of themselves. (Vol. 1 at 185).   In her testimony, "C" identified nude pictures of herself that Dahl had taken in a Moberly cemetery in 2007, when she was thirteen years old. (Gov. Ex. 16, 17. Vol. 1 at 186-187).   She also identified an image that she took of herself and sent to Dahl when she was fourteen or fifteen, in Fulton, Missouri. (Gov. Ex. 18, Vol. 1 at 187). "C" testified that Dahl bought her a diamond engagement ring when she was thirteen.   (Vol. 1 at 187).

The subject of this Count One, Government's Exhibit 19, is a photograph of Dahl's penis penetrating "C's" vagina when she was fourteen years old, taken by Dahl using his cell phone. (Vol. 1 at 108, 188-189). Dahl sent that image to "C" twice via email. (Gov. Ex. 27-30, Vol. 1 at 189-190). Investigator Donya Jackson examined the contents of Dahl's email account and located the emails. She credibly testified that Dahl's email account was saved on a server owned by Microsoft, located outside the state of Missouri. Therefore, the email traveled over the Internet through interstate and foreign commerce. (Vol. 1 at 103-104). Jackson stated that, based on the file name, Government's Exhibit 19 was created on October 19, 2007, and sent from

---

1    The trial transcript is found at Doc. 140-141 of the docket sheet.

Dahl's account to "C" on December 22, 2007, and again on January 3, 2008. (Vol. 1 at 107-108, 189-190, Gov. Ex. 27-30).   The second email stated, "THIS IS WHAT I WANT TO DO!!!" (Gov. Ex. 29, Vol. 1 at 109).   Around the same time, Dahl also sent "C" pictures of his penis. The file name format of these images was the same as Exhibit 19. (Vol.1 at 111. Gov. Ex. 31-34). Given the consistency in format, the Court finds that the reasonable inference is that these photos were taken from the same device, namely Dahl's cell phone.

Additionally, Jackson reviewed Dahl's Facebook account and located images of "C" that Dahl sent to another person. (Vol. 1 at 55, 115). One was a selfie of "C" exposing her genitals, taken when she was fourteen. (Gov. Ex. 18, Vol. 1 at 58-62, 187). Another was Exhibit 19, the subject of this Count One. (Gov Ex. 19, 20, Vol. 1 at 58-62).   Dahl told the recipient of this photo, in 2016, that he was "banging the trophy girl from the racetrack when she was 14, LOL. … I was 23."   (Vol. 1 at 60-62 Gov. Ex. 20).   Dahl's Facebook account also contained a screenshot list of Dahl's sexual partners, among which "C" was #37. (Gov. Ex. 15, Vol. 1 at 54).

On May 16, 2023, Dahl took the stand and testified in his own defense. As to this Count One, Dahl claimed that his computers were hacked, first in 2011 and again in 2016.   (Vol. 2 at 26).   He admitted taking an image of himself having sex with "C" but claimed that it was in 2011 rather than 2007. (Vol. 2 at 26-27).   He stated that he did not start using the particular signature block on the emails until 2010.   (Vol. 2 at 28).   He denied sending the image to others via Facebook and claimed that "C's" family may have hacked his account. (Vol. 2 at 30, 38).[2] However, on cross-examination, the Government established that Dahl sent similar photos of "C" to other Facebook users in 2015 and 2016.   (Vol. 2 at 39-40, Gov. Ex. 61, 62).

---

[2]     "C" testified that her parents sought an order of protection against Dahl in 2008 after he sent her a sex toy. They settled for a private agreement but later obtained a court order in 2009.   (Vol. 1 at 192).

3

Dahl provided no evidentiary support for his claims of hacking, and the Court finds Dahl's version of events, including the timeline, entirely incredible in light of the Government's forensic evidence and "C's" consistent and credible testimony.

**B. Count Two: Receipt of Child Pornography**

The acts charged in Count Two took place in Audrain County, Missouri. Victim "S" was born in May of 2004. (Gov. Ex. 57). She met Dahl in late December 2020 when she was sixteen years old and Dahl was thirty-six. (Vol. 1 at 77-78, 93). Dahl bought "S" gifts including a cell phone on his plan as well as alcohol and vaping pods that she was not old enough to purchase herself. (Vol. 2 at 24, Vol. 1 at 81, 93).

Dahl and "S" communicated over social media platforms such as Facebook Messenger and Snapchat. "S" sent Dahl a video of herself through Snapchat in which she is nude and dancing in a manner called "twerking,"[3] with her buttocks and genitals as the focal point of the frame. (Gov. Ex. 9, Vol. 1 at 44, 82). Her pubic area was exposed at times throughout the video. Dahl confirmed that he received the video, which investigators later located in Dahl's Snapchat account. (Vol. 1 at 39, 44, 82). This video, Government's Exhibit 9, is the subject of this Count Two. Dahl also sent nude images of himself to "S" and engaged in Facetime video chats with her and her friends while they were in the shower. (Vol 1. at 38, 79, 83). He took nude screenshots of "S" from these chats. (Vol. 1 at 51, Gov. Ex. 13).

"S's" mother discovered the relationship and reported it to law enforcement in early January 2021. (Vol. 1 at 24, 93). Dahl was interviewed by Jeff Glandon, an investigator with

---

[3] "Twerking" (misspelled "torquing" in the transcript), is defined as "sexually suggestive dancing characterized by rapid, repeated hip thrusts and shaking of the buttocks, especially while squatting." *Twerking*, Merriam-Webster, https://www.merriam-webster.com/dictionary/twerking (last visited August 2, 2023).

the Missouri State Technical Assistance Team. (Vol. 1 at 22, 31).  After being read his *Miranda* rights, Dahl admitted that he received the nude twerking video of "S" but repeatedly insisted that he believed her to be seventeen. (Vol 1. at 33-35, Gov. Ex. 5, 5b).  Dahl also told Glandon that he intended for "S" to be #100 on his list of sexual partners. (Gov. Ex. 15, Vol. 1 at 53).

At trial, Dahl reiterated that he believed "S" to be seventeen years old when he received her video. (Vol. 2 at 18).  He claimed that the two got engaged a month after they met and were planning a wedding.  (*Id*.)  In her testimony, "S" stated that the relationship was not romantic and Dahl had never asked her out, but she acknowledged that they had discussed wedding dates. (Vol. 1 at 80, 85-86).  She conceded that Dahl was led to believe that she was seventeen. (*Id*. at 90).  Dahl initially denied buying vaping products and alcohol for "S" but later admitted it when confronted with earlier interview transcripts, thus further undermining his credibility, in the Court's view.  (Vol. 2 at 43-44).  Dahl would leave these gifts for "S" in a ditch near her mother's house, which demonstrates his consciousness of wrongdoing.  (Gov. Ex. 15, Vol. 1 at 93).  **Count Three: Receipt of Child Pornography**

It is undisputed that the acts charged in Count Three took place in the Eastern District of Missouri.  Victim "M" was born in May of 2011.  Her mother had an on-and-off sexual relationship with Dahl beginning in 2008. (Vol. 1 at 157).  She is a co-defendant in this case.[4] The two communicated via email and on social media platforms. (Vol. 1 at 158).  In 2018, they exchanged messages sexualizing "M," who was seven years old at the time.  (Vol. 1 at 64-66, 159-160).  They discussed the prospect of Dahl taking "M's" virginity before she reached age

---

[4] The co-defendant's name is unnecessary here and thus omitted to protect the child's identity at least for purposes of this order, though it is known to the parties and available elsewhere on the public record.

eighteen. (Vol. 1 at 64.) Co-defendant offered to send Dahl pictures of "M" "in her panties with her legs spread open" and further suggested that it "would have been hot to pull her panties to the side," in response to which Dahl agreed. (Vol. 1 at 66). Co-defendant subsequently created a series of images of "M" in which her underwear is pulled aside to expose her genitals. (Gov. Ex. 44-48). The subject of this Count Three is one such photo, Government's Exhibit 44. A separate screenshot shows that same image with the date (February 24, 2019) and Dahl's email address. (Gov. Ex. 49, Vol. 1 at 165). Co-defendant sent these images to Dahl via email, and the two discussed them over Facebook Messenger, including the fact that "M" was seven years old. (Vol. 1 at 65-66, 160-165, Gov. Ex. 21, 36- 39).

At trial, Dahl admitted receiving the images of "M" but claimed that he placed them in a folder marked "evidence" and planned to turn them over to law enforcement. At the time, Dahl's father, with whom he resided, worked for the Audrain County Sheriff's Department. (Vol. 2 at 31, 51-52). However, Dahl never turned over the photos to law enforcement or even mentioned the situation to his father. In his testimony, he first claimed that he lost the files due to a faulty upgrade. (Vol. 2 at 32). Later, he said that he did not know how to report it anonymously and eventually forgot. (Vol. 2 at 53-54). When asked about his conversations with Co-defendant contemplating the sexual abuse of "M," Dahl said he was "preserving the illusion." (Vol. 2 at 50). Dahl's purported intentions are not supported by any forensic evidence or witness corroboration, and the Court finds his inconsistent explanations wholly lacking in credibility.

## II.     CONCLUSIONS OF LAW

As relevant to all counts, child pornography means any visual depiction, including a photograph or video, of a minor engaging in sexually explicit conduct. 18 U.S.C. § 2256(8)(A).

Sexually explicit conduct includes actual or simulated sexual intercourse as well as lascivious exhibitions of the anus, genitals, or pubic area of any person. 18 U.S.C. § 2256(2)(A).

### A. Count One: Sexual Exploitation of a Minor / Production of Child Pornography, 18 U.S.C. § 2251(a)

The crime of Sexual Exploitation of a Minor, as charged in Count One, has four elements: (1) between October 1, 2007 and January 31, 2008, "C" was under the age of eighteen years; (2) Dahl knowingly employed, used, persuaded, induced, enticed, and coerced "C" to engage in sexually explicit conduct; (3) Dahl acted with the purpose of producing a visual depiction of such conduct; and (4) the visual depiction was produced using materials that had been mailed, shipped, or transported across state lines or in foreign commerce by any means including by computer or cell phone or the visual depiction was actually transmitted using any means or facility of interstate or foreign commerce. 18 U.S.C. § 2251(a); *United States v. Pliego*, 578 F.3d 938, 941 (8th Cir. 2009); Eighth Circuit Model Pattern Instructions 6.18.2251(a) (2021).

As to the first element, the Government proved beyond a reasonable doubt that "C" was under the age of eighteen. "C" credibly testified she was born in 1993 and was fourteen years old when the image marked as Government's Exhibit 19 was taken of her having sexual intercourse with Dahl.  Further, Investigator Jackson credibly testified that, based on the forensic evidence, the photo was created on October 19, 2007, four years before "C" would have turned eighteen. Dahl admitted he took the photo but claimed that his computer was hacked and the photo was actually taken in 2011. But the forensic evidence, including Dahl's admission to a third party on Facebook Messenger in 2016, boasting that he was "banging the trophy girl" when she was fourteen, refutes Dahl's claims. This evidence, along with "C's" testimony, establishes beyond a

reasonable doubt that Dahl took the photo in 2007 when "C" was fourteen.   Dahl's self-serving testimony to the contrary was neither credible nor supported by any forensic or other evidence.

As to the second element, the Government proved beyond a reasonable doubt that Dahl used "C" in sexually explicit conduct as defined in 18 U.S.C. § 2256(2)(A). Government's Exhibit 19 clearly depicts a male and female engaged in actual genital-genital sexual intercourse within the statutory definition.   Both "C" and Dahl acknowledged that she was the female and Dahl was the male in the photo.

As to the third element, the Government has proven beyond a reasonable doubt that Dahl acted with the purpose to produce a visual depiction of such conduct. "Visual depiction" includes data stored on computer disk or by electronic means capable of conversion into a visual image. 18 U.S.C. Section 2256(5); *United States v. Whiting*, 165 F.3d 631, 633 (8th Cir. 1999).   Dahl admitted that he took the photo.

The fourth element is jurisdictional. "As to the jurisdictional nexus element, it may be satisfied: [(a)] if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, [(b)] if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or [(c)] if such visual depiction has actually been transported in interstate or foreign commerce or mailed." 18 U.S.C. § 2251(a); *United States v. Terrell*, 700 F.3d 755, 758-759 (5th Cir. 2012). "[T]he Internet is an instrumentality and channel of interstate commerce." *United States v. Trotter*, 478 F.3d 918, 921 (8th Cir. 2007). Here, Dahl used his cellphone[5]  and email, and thereby the Internet, to produce, save, and

---

[5]     Cellular telephones are also instrumentalities of interstate commerce.  *United States v. Watson,* 852 Fed. Appx. 164, 168 (6th 2021).

transport the image of child pornography. The Court finds that the Government has proven that the visual depiction was transported across state lines or in foreign commerce.

Based on the totality of evidence and the Court's assessment of witness credibility, the Court finds Dahl guilty beyond a reasonable doubt on Count One.

**B. Count Two: Receipt of Child Pornography, 18 U.S.C. § 2252A**

The crime of Receipt of Child Pornography, as charged in Count Two, has three elements: (1) Between January 1, 2018, and March 31, 2021, the defendant knowingly received a video that contained the visual depiction of child pornography; (2) the defendant knew that the visual depiction was of a minor engaging in sexually explicit conduct; and (3) the visual depiction had been mailed, shipped, or transported in interstate or foreign commerce. *United States v. Huyck*, 849 F.3d 432, 442 (8th Cir. 2017); Eighth Circuit Model Pattern Instructions 6.18.2252 (2021).

As to the first element, the Government has proven beyond a reasonable doubt that Dahl, then age thirty-six, knowingly received a video of minor child "S," then age sixteen, dancing in a lascivious display of her genitals. The term "minor" means any person under the age of eighteen years. 18 U.S.C. § 2256(1).   Dahl believed "S" to be seventeen years old at the time. Thus, even according to his own misinformation, Dahl knew "S" to be a minor. Dahl does not dispute that "S" was a minor at the time in question.

As to the second element, the Government proved beyond a reasonable doubt that, again, Dahl knew that "S" was a minor engaging in sexually explicit conduct, the definition of which includes a lascivious exhibition of a person's genitals or pubic area. "Lascivious exhibition" requires consideration of the following factors:

> (1) whether the focal point of the picture is on the minor's genitals or pubic area; (2) whether the setting of the picture is sexually suggestive, that is, in a place or pose generally associated with sexual activity; (3) whether the minor is depicted in an unnatural pose or in inappropriate attire, considering the age of the minor; (4) whether the minor is fully or partially clothed, or nude; (5) whether the picture suggests sexual coyness or a willingness to engage in sexual activity; (6) whether the picture is intended or designed to elicit a sexual response in the viewer; (7) whether the picture portrays the minor as a sexual object; and (8) the caption(s) on the picture(s).

*United States v. Dost,* 636 F. Supp. 828, 832 (S.D. Cal.1986); *United States v. Wallenfang*, 568 F.3d 649, 657 (8th Cir. 2009); Eighth Circuit Model Pattern Instruction 6.18.2252A (2021).   An image need not involve all of these factors to constitute a lascivious exhibition; rather, it is for the fact-finder to decide the weight to be given to any of these factors. *Id*.  The inquiry is always case-specific. *Id*. at 658.

Dahl's sole challenge on this Count Two is that "S's" video performance does not rise to the level of "lascivious exhibition." Given the overall nature of the video (Gov. Ex. 9), the Court finds Dahl's position entirely unpersuasive. To the contrary, in its fact-finding role in this bench-tried case, the Court has no difficulty finding that the video at issue does indeed constitute a lascivious exhibition. "S" is completely nude, turns around, bends over at the waist, and begins to "twerk," aiming her buttocks, anus, and genitals at the camera. The video readily satisfies nearly all of the factors enumerated in *Dost*.

As to third element, the video was sent to Dahl via the online social media application Snapchat, which uses the Internet to transmit messages and images. Thus, the video necessarily travelled through interstate commerce.

The Court therefore finds Dahl guilty on Count Two.

**C.  Count Three: Receipt of Child Pornography, 18 U.S.C. § 2252A**

The crime of Receipt of Child Pornography, as charged in Count Three, has three elements: (1) Between January 1, 2019, and March 31, 2021, the defendant knowingly received an image that contained the visual depiction of child pornography; (2) the defendant knew that the visual depiction was of a minor engaging in sexually explicit conduct; and (3) the visual depiction was mailed, shipped, or transported in interstate or foreign commerce. *United States v. Huyck,* 849 F.3d 432, 442 (8th Cir. 2017); Eighth Circuit Model Pattern Instructions 6.18.2252 (2021).

As to the first element, Dahl received the image of "M" on or about February 24, 2019, which is within the time frame charged in the indictment. The image was child pornography, as it depicted "M's" exposed genital area. "M" was born in May of 2011, and thus was seven years old in the image. Facebook messages admitted at trial confirm that Dahl received the child pornographic image of "M."

As to the second element of Receipt of Child Pornography, the image depicted "sexually explicit conduct" because it included the lascivious exhibition of the genitals or pubic area. As referenced above, the *Dost* factors guide the fact-finder's determination whether an image constitutes a lascivious exhibition. Again here, the Court has no difficulty finding that the image exposing "M's" genitals, created by her mother, portraying the child as a sexual object for Dahl's gratification, constitutes a lascivious exhibition.

As to the third element, the image was emailed to Dahl via the Internet, a means or facility of interstate commerce. Further, Dahl used his email account to receive the image through servers located outside the state of Missouri.

Dahl's only defense on this Count is that he received the photo as evidence with the intention to turn it over to law enforcement. But Dahl never did so, and his explanations for this failure were not credible. Rather, his communications with the co-defendant. Based on the unrefuted forensic evidence and other credible evidence presented at trial, the Court finds Dahl guilty on Count Three.

### III.   CONCLUSION

The credible testimony and admissible exhibits presented at trial establish beyond a reasonable doubt that Dahl committed the crimes charged in the indictment.

Accordingly,

**IT IS HEREBY ORDERED** that the Court finds Defendant William Dahl **GUILTY BEYOND A REASONABLE DOUBT** on Counts I through III of the Second Superseding Indictment (Doc. 110).

**IT IS FURTHER ORDERED** that Defendant's motion for judgment of acquittal is **DENIED**.   (Doc. 145).

**IT IS FINALLY ORDERED** that a pre-sentence investigation report shall be prepared. A sentencing date will be set and related matters will be addressed in a separate order.

Dated this 5th day of September 2023.

_John A. Ross_
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE